IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                              1:23-cr-00473-KWR

WILLIAM BADONI,

      Defendant.

## MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO THE PRE-SENTENCE REPORT

THIS MATTER comes before the Court upon Defendant's Objection to the Presentence Investigation Report. **Doc. 85.** Having reviewed the pleadings, testimony and evidence presented at sentencing, and applicable law, this Court finds that Defendant's objection is not well taken and, therefore, **OVERRULED**.

## BACKGROUND

Defendant pled guilty to Counts 1 through 10 of the Indictment. **Doc. 85 at ¶2**. Count 1 charged Conspiracy to Commit Federal Program Fraud, in violation of 18 U.S.C. §§ 371 and 666(a)(2); Count 2 charged Theft or Bribery Concerning Programs Receiving Federal Funds, in violation of 18 U.S.C. § 666(a)(2); and Counts 3-10 charged Laundering of Monetary Instruments and Aiding and Abetting, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2. *Id.* Defendant is the owner of Badoni Construction, and he conspired with co-defendant Elroy Harry to win bids for construction and maintenance jobs at Kinteel Residential Campus, Inc. ("KRCI"), where Harry was the maintenance supervisor. *Id.* at ¶¶9–12. Mr. Harry would (1) leak information about other bids so that Defendant could submit the lowest bids; (2) conspire with Defendant, who submitted fake bids by fake companies; and (3) persuade the board of trustees to accept Defendant's bid

1

(which was always accepted). Moreover, after Defendant's bid was accepted, Defendant submitted cost-overruns for expenses which were not justified. *Id*. at ¶¶11–12.

Defendant objected to Paragraph 34 of the Presentence Investigation Report (PSR), which includes a twelve offense level increase pursuant to §2C1.1(b)(2) and the table at §2B1.1(b)(2)(G). He argued that the loss amount Probation calculated is grossly overblown, and that the correct increase would be eight offense levels.

Paragraph 34 in whole reads:

> Specific Offense Characteristics: The benefit received in return for the payments (kickbacks) was approximately $500,000, warranting a 12-level increase, pursuant to §2C1.1(b)(2) and the table at §2B1.1(b)(2)(G).

**Doc. 85 at ¶34**.

The Government attached in its Response to Defendant's objection a transcript of a phone call between Defendant and his co-defendant. **Doc. 121-1**. Based on this transcript, Probation provided the Court with an updated estimate of the loss amount. **Doc. 119**. The Government provided the Court with a third estimate of the loss amount in its Sentencing Memorandum. **Doc. 122-1** (Investigative Activity Report from Department of the Interior, Office of Inspector General).

At sentencing, the Court received testimony from Department of the Interior, Office of Inspector General Special Agent (SA) Steven Shannon and KRCI Executive Director Rick Edwards. SA Shannon offered testimony about his investigation ascertaining the work performed at KRCI by Defendant which required repair or demolition and reconstruction. He also testified to his experience as a white-collar investigator, and what, in his opinion, "legitimate" change orders and bids meant in the context of this kind of fraud. Mr. Edwards testified to the condition of the school following Defendant's fraud, including the severe state of disrepair in which the school remains and the risks it has posed to its students. He also testified to the amount of money the school will need to and has already expended to repair Defendant's substandard work.

After hearing testimony and considering all the available evidence, the Court found that the twelve offense level enhancement was appropriate and proceeded to sentencing.

## LEGAL STANDARD

A federal sentence must be procedurally and substantively reasonable. *See United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008). "A sentence is procedurally unreasonable if the district court incorrectly calculates or fails to calculate the Guidelines sentence, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on clearly erroneous facts, or inadequately explains the sentence." *Id*. (citing *Gall v. United States,* 552 U.S. 38, 50–51 (2007)). Procedural reasonableness also requires a district court to "afford the defendant his rights under the Federal Rules of Criminal Procedure." *See United States v. Martinez-Barragan,* 545 F.3d 894, 898 (10th Cir.2008) (quoting *United States v. Geiner,* 498 F.3d 1104, 1107 (10th Cir.2007)) (cleaned up).

When any portion of the PSR is "disputed," a sentencing court's fact-finding obligation is triggered and must either "rule on the dispute" or "determine that a ruling is unnecessary." Fed. R. Crim. P. 32(i)(3)(B); *United States v. Chee*, 514 F.3d 1106, 1114–15 (10th Cir. 2008). A ruling is unnecessary "either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). "[A] defendant does not 'dispute' a PSR's recitation of facts underlying his arrests unless he presents 'information to cast doubt on' the facts." *United States v. Warren*, 737 F.3d 1278, 1285–86 (10th Cir. 2013) (citing *United States v. Yates,* 22 F.3d 981, 989 (10th Cir.1994)). "If a PSR is *not* disputed in this fashion, it is well established that a district court is free to rely on the PSR at sentencing." *Warren*, 737 F.3d at 1286 (emphasis original); *see also United States v. Tindall*, 529 F.3d 1057, 1064 (10th Cir. 2008).

The government must prove disputed facts by a preponderance of the evidence. *See Tindall*, 529 F.3d at 1063. "The district court may base its findings of fact at sentencing on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentence hearing." *United States v. White*, 663 F.3d 1207, 1216 (11th Cir. 2011).

## ANALYSIS

Turning to Defendant's objection, the Court finds that it is without merit and should be overruled. The United States' evidence at sentencing satisfied its burden.[1] The Court finds that a twelve offense level increase for the purposes of sentencing is appropriate based on the loss amount proven at sentencing.

"Under the sentencing guideline for fraud, the amount of loss heavily influences the offense level." *United States v. Pielsticker*, 678 F. App'x 737, 743 (10th Cir. 2017) (citing USSG § 2B1.1(b)(1)). Where a defendant objects to Probation's calculation of the amount lost as it pertains to the offense level, the burden then shifts to the government to prove the loss amount by a preponderance of the evidence at sentencing. *United States v. Conley*, 89 F.4th 815, 823 (10th Cir. 2023), *cert. denied,* 144 S. Ct. 1381, 218 L. Ed. 2d 441 (2024); *United States v. Jones*, 680 F. App'x 649, 657 (10th Cir. 2017). The district court's loss calculations are entitled to deference under the guidelines, because it is in the best position to estimate the loss based on the evidence before it. *United States v. Blind*, 429 F. App'x 795, 802–03 (10th Cir. 2011); *see also* USSG § 2B1.1 cmt. n. 3(C) ("The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence.").

---

[1] As a preliminary matter, Defendant offered only conclusory allegations to support his assertion and relied on professional experience and his attorney's estimates. **Doc. 117 at 1**; *Jones*, 680 F. App'x at 657. "[A] defendant does not 'dispute' a PSR's recitation of facts underlying his arrests unless he presents 'information to cast doubt on' the facts." *Warren*, 737 F.3d at 1285–86. The Court would be within its rights to find that that based on Defendant's threadbare objection, he has not seriously contested the PSR. *United States v. Westover*, 435 F.3d 1273, 1278 (10th Cir. 2006). Had the Court done so, it would have been free to rely on the facts of the PSR without any further fact finding. *Warren*, 737 F.3d at 1285–86.

In determining a defendant's base offense level, the sentencing court should use whichever is the greater of the actual loss or intended loss. USSG § 2B1.1, cmt. n. 3(A). "'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.*, cmt. n. 3(A)(i). "'Reasonably foreseeable pecuniary harm' means pecuniary harm that the defendant knew, or under the circumstances, reasonably should have known, was a potential result of the offense." *Id.*, cmt. n. 3(A)(iv). Based on this guidance from the Guidelines, both the Guidelines and the Tenth Circuit permit the sentencing judge to estimate loss based on available information. *United States v. Snow*, 663 F.3d 1156, 1161 (10th Cir. 2011) (quoting U.S.S.G. § 2B1.1 cmt. n. 3(C)). Only when "the loss is not reasonably determinable" may a court "use the gain that resulted from the fraud as an alternative measure." *Id.* (citation omitted) (relying on U.S.S.G. § 2B1.1 cmt. n. 3(B)). "The defendant's gain may be used only as an alternate estimate of that loss. . . ." *Id.*

Defendant argued in his objection that "there was no more than a 10% margin on any of the projects" and that the initial loss should thus be $200,000. **Doc. 117 at 1**. Considering that Defendant then paid at least $50,000.00 of that amount to Mr. Harry,[2] Defendant argues he received less than $150,000.00 in profit margin for these building projects. *Id.* Thus, Defendant argues Paragraph 34 should reflect only an eight level offense increase, rather than twelve. *Id.*; *compare* U.S.S.G. 2B1.1(F) (for a loss amount of more than $95,000 but less than $150,000, the offense level increase is eight) with U.S.S.G. 2B1.1(G) (for a loss amount more than $250,000 but less than $550,000, the offense level increase is twelve). The Court finds this estimate, which by defense counsel's own admission is based on counsel's guesswork, to be meritless. *See Warren*,

---

[2] It is important to note, as Probation points out in their July 21, 2025 addendum, that "the defendant's assertion that the total loss amount should be decreased by the amount he gave to his codefendant" is faulty logic. "By this same logic, had he given away all the money he received because of fraud, it is as if he believes the total loss amount would be $0." **Doc. 119 at 1**.

737 F.3d at 1285–86 ("[A] defendant does not 'dispute' a PSR's recitation of facts underlying his arrests unless he presents 'information to cast doubt on' the facts.").

The Court also finds that the original estimate from Probation of $500,000 was not supported by a preponderance of the evidence at sentencing. In the PSR, Probation estimated that approximately 25% of the $2 million Defendant earned while doing construction for KRCI was not justified and was fraudulently obtained by way of inflated bids and unnecessary change orders, which results in a $500,000 loss amount. **Doc. 85 at ¶26**. The PSR notes that while the case agents are aware that not all that money went toward criminal conduct, the "projects were so permeated with fraud that it is impossible to know what amount of the money went toward legitimate work, and what amount went toward the fraud." **Doc. 85 at ¶26.** Consequently, the calculation that 25% of the $2 million, or $500,000, loss amount is the case agents' best estimate. *Id.* Defendant objected on the grounds that this is an unsupported number based mostly in guesswork and the Court agrees. The evidence presented at sentencing did not support finding a loss amount of $500,000 based on the formula in the PSR.

However, the Court finds that two loss amounts support an offense level increase of at least twelve, and that the Government supported both numbers by testimony and exhibits proffered at sentencing. It finds that both numbers are reasonably determinable and supported by a preponderance of the evidence available in the PSR, pleadings, and testimony from sentencing.

First, the estimate Probation provided in its addendum is reasonably determinable and supported by both records and testimony. **Doc. 119 at 2**. The Government presented Probation with analysis from a recorded phone call between Defendant and Mr. Harry during the investigation. The Government asserts that "the topic of conversation was the defendant informing Harry that every change order completed for the KRCI jobs was fraudulent." *Id.* In that phone

6

conversation, Defendant says that the change orders were "not legit," **doc. 121-1 at 13:18–13:20**, and that bids were "not real." *Id.* **at 14:15–15:2.**

Evidence at sentencing corroborates the Government's assertion that the transcript of the phone call meant that most or all the bids and change orders Defendant submitted to KRCI were fraudulent. The Court heard testimony from SA Shannon, who testified to his experience as a white-collar investigator. He testified that in his experience, "not legit[imate]" and "not real" in the context of this kind of fraud usually meant submitting bids or change orders that were unnecessary, fraudulent, or not asked for. He also testified that the investigation had been unable to find any witnesses from other construction companies that supposedly submitting bids, suggesting that most or all the bids KRCI received were fraudulent. The Court find that SA Shannon's testimony is credible, and that his testimony, along with the transcript, supports a finding that Defendant submitted a significant number of fraudulent bids and change orders while working for KRCI.

Based on this finding that there was significant fraud in the change orders, the Court finds that Probation's calculations in the addendum are supported by a preponderance of the evidence. The change orders and inflated amounts are as follows:

1. **Basketball court:** a **$40,751.49** project was inflated to a **$246,120.22** project, resulting in a difference of **$205,368.73**;

2. **East wall and fire door of boy's wing**: a **$49,555.00** project was inflated to an **$83,898.36** project, resulting in a difference of **$34,343.36**;

3. **Cafeteria**: a **$98,946.76** project was inflated to a **$103,928.76** project, resulting in a difference of **$4,982.00;** and

4. **Shower subfloor decking**: a **$94,562.00** project was inflated to a **$183,761.60** project, resulting in a difference of **$89,199.60**.

This brings the fraudulently obtained amount to **$333,893.69.** *Id.* The Court also finds that the Government proved by a preponderance of the evidence that Defendant inflated costs by

7

charging exorbitant fees for the estimates he provided on those jobs, which totaled an additional **$20,050.50**. This results in a grand total loss amount **of $353,944.19.** *Id.* This reasonably determinable amount supports the twelve offense level increase. USSG 2B1.1(G) (for a loss amount more than $250,000 but less than $550,000, the offense level increase is twelve); *Snow*, 663 F.3d at 1161 (the sentencing judge should estimate the loss amount based on the available information); USSG 2B.1 cmt. n. 3(B) ("The court need only make a *reasonable estimate* of the loss." (emphasis added)). Based on this finding, the Court can overrule Defendant's objection.

Alternatively, the Court may consider the cost of repairs to damaged property in making its reasonable estimate of the loss amount. USSG § 2B1.1, cmt. n. 3(B)(iii). The Government attached an Investigative Activity Report ("DOI Report) from SA Shannon, an agent with the U.S. Department of the Interior, Office of the Inspector General. **Doc. 122-1**. The report detailed a call between SA Shannon and Mr. Edwards "to ascertain what work [Defendant] completed at KRCI that has been re-done or will need to be re-done in the future," including numeric estimates for:

1. **Handicap ramps**: All handicap ramps that Defendant built were not up to code and KRCI has received significant pressure from inspectors to re-do them before school opening. The report estimated a cost at minimum of **$125,000 up to $150,000** since demolition of the old ramps must occur first.

2. **Plumbing and sewer**: KRCI has spent approximately **$480,000** to fix the plumbing Defendant allegedly worked on. The Report stated there were pipes that were not connected to the wastewater system, and the work was completed under emergency authorization, or they would have been forced to close for sanitary reasons.

3. **Cafeteria doors**: KRCI spent an additional **$20,000** to fix doors in the cafeteria. Defendant was supposed to level the floor in this area and did not do so.

**Doc. 122-1**.

These estimates of costs already expended total **$625,000**. The Report also stated the "basketball court project along with retaining walls, fencing, etc. was poorly crafted and . . . is a

hazard." *Id.* The estimates to repair the retaining wall, wheelchair ramp, chain link fence, and angle walls for the basketball court totals **$164,550.33**. *Id.* SA Shannon thus estimated the lowest total loss amount to KRCI is **$789,641.33** which does not include estimate fees or other ancillary charges related to the work Defendant performed, or new work that KRCI will be required to complete in the future.

Testimony at sentencing corroborated this report and estimate. Mr. Edwards testified that there has been significant damage to the facilities because of Defendant's shoddy work. He testified that the basketball court has been set for demolition and that wheelchair ramps are not compliant with the code such that children have fallen at the facility while using them. He also testified that the basketball court routinely floods and requires weekly repairs to its walls, that the bathrooms were flooding and falling apart, and that the school has received significant pressure from federal inspectors each quarter to conduct the repairs. While Mr. Edwards came to the school in 2021, he testified that he had done significant research on the cost of repairs, had gotten informal estimates from several contractors, and believed the true ultimate cost of repairs would likely be even higher than what was in the report. The Court finds Mr. Edwards to be a credible witness and that the available evidence of the cost to repair damage to the facility supported a loss amount of **$789,641.33**. *See United States v. Sutton*, 520 F.3d 1259, 1264 (10th Cir. 2008) (upholding a sentence as substantively reasonable where the court relied on the cost of repairs to the damaged property); USSG §2B1.1 cmt. n. 3(B)(iii) ("The estimate of the loss shall be based on available information, taking into account, as appropriate and practicable under the circumstances, factors such as . . . [t]he cost of repairs to damaged property.")

A loss amount of $789,641.33 supports a fourteen offense level increase. USSG §2B1.1(b)(2)(H) (for a loss amount of more than $550,000 and less than $1,500,000, increase the

9

offense level by fourteen). However, given the evidence at sentencing, including the testimony from SA Shannon, the Court finds it appropriate to maintain the twelve offense level increase, as originally calculated by Probation.

## CONCLUSION

Accordingly, the Court **overrules** Objection 1 to the presentence report. Probation's original twelve offense level increase was appropriate.

It is **SO ORDERED**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE